IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAWANA LISTER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-1436-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shawana Lister seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including pain and weakness in her right wrist, morbid obesity, diabetes, and knee injuries. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on December 11, 2008. At the time of the hearing, plaintiff was 36 years old. She has a high school equivalency diploma and past work experience as a collections clerk. Plaintiff has not engaged in substantial gainful activity since October 4, 2006.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from diabetes mellitus, bilateral carpal tunnel syndrome, knee injuries, and morbid obesity, the judge concluded that the

severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform sedentary work with no more than occasional handling and fingering and some non-exertional limitations. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as an election clerk, a call-out operator, and a surveillance-system monitor -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three grounds for relief, plaintiff contends that: (1) the ALJ did not follow the proper legal standards in evaluating the opinion of her treating physician; (2) the ALJ failed to consider the severe limitations relating to her wrist impairment; and (3) the ALJ did not properly consider the severity of her depression and bipolar disorder.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show

that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first contends that the ALJ did not follow the proper legal standards in evaluating the opinion of her treating physician, Dr. John McConnell, who made "repeated observations of severe pain and functional limitations in [her] right hand." (*See* Plf. MSJ Br. at 13-14). When plaintiff stopped working because of wrist pain in October 2005, she was referred to Dr. McConnell, an orthopedic surgeon, who recommended carpal tunnel release surgery. (*See* Tr. 28, 30, 306-14). That surgery was performed on January 15, 2007. (*Id.* at 533-68). After showing positive results initially, plaintiff reported recurrent symptoms in April 2008. (*Id.* at 668-69, 867-69). Additional testing revealed that plaintiff had a limited range of motion and strength in her right wrist and hand,

some of which was greater than before the surgery. (*See id.* at 870-71, 892-93, 900-901, 908-09, 968). Between 2005 and 2008, Dr. McConnell indicated on multiple reports filed with the Texas Worker's Compensation Commission that plaintiff's wrist condition prevented her from "returning to work[,]" at least through June 30, 2008. (*See id.* at 670, 675, 685, 692, 842, 865, 881, 886, 894, 902, 910, 982). In his last report dated July 10, 2008, Dr. McConnell noted that plaintiff continued to suffer from right wrist pain and "possibly recurrent" carpal tunnel syndrome, but observed that "[a]t this point pain is better." (*See id.* at 1000).

Later that month, plaintiff was referred to Dr. Joshua Lemmon, a hand surgeon, for a second opinion regarding the persistent pain in her right wrist. (*See id.* at 985-86). After examining plaintiff and reviewing her medical records and the results of prior testing, Dr. Lemmon reported that plaintiff showed "improved median nerve function following carpal tunnel release when compared to her old studies." (*Id.* at 986). According to Dr. Lemmon:

> I feel the patient has improved from carpal tunnel release. I do not clinically see any strong evidence of cubital tunnel syndrome or radial tunnel syndrome. She may indeed have a dorsal wrist ganglion which could explain some of her dorsal wrist pain and for this I have requested an MRI.

(*Id.*). In view of the inconsistent opinions offered by Dr. McConnell and Dr. Lemmon,[1] the ALJ based her disability determination on residual functional capacity assessments performed by two agency physicians, both of whom reported that plaintiff had no manipulative limitations as a result of her wrist condition. (*Id.* at 77; *see also id.* at 660, 747). While acknowledging that the opinions of non-examining physicians do not, as a general matter, deserve as much weight as those of

---

[1] Plaintiff argues that the opinions offered by Dr. McConnell and Dr. Lemmon are not inconsistent because both doctors agree that she continued to suffer from pain in her right wrist. (*See* Plf. MSJ Br. at 13-15). However, the opinions appear to conflict on the more significant issue of whether surgery improved plaintiff's wrist condition. In July 2008, Dr. McConnell described plaintiff's condition as "possibly recurrent" carpal tunnel syndrome. (*See* Tr. at 1000). That same month, Dr. Lemmon observed that plaintiff had improved following carpal tunnel release surgery. (*Id.* at 986).

examining physicians, the ALJ cited the conflicting opinions of Dr. McConnell and Dr. Lemmon as one reason to deviate from the general rule and give "little weight" to the opinion of plaintiff's treating physician. (*Id.* at 77).

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 at *4 (SSA Jul. 2, 1996); *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

    (1)    the physician's length of treatment of the claimant;

    (2)    the physician's frequency of examination;

    (3)    the nature and extent of the treatment relationship;

    (4)    the support of the physician's opinion afforded by the medical evidence of record;

    (5)    the consistency of the opinion with the record as a whole; and

    (6)    the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion,

> supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

In her decision, the ALJ explained that she gave "little weight" to the opinion of Dr. McConnell because another examining physician, Dr. Lemmon, "reported that he did not clinically see any strong evidence of cubitial [*sic*] tunnel syndrome or radial tunnel syndrome." (Tr. at 77). This explanation constitutes "good cause" for giving Dr. McConnell's opinion limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 1527(d)(2), she cited to the relevant regulations and social security rulings, indicating that each factor was considered. (*See id.* at 74-77). The regulations require only that the Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to the treating source opinion. *See* 20 C.F.R. § 1527(d)(2). The ALJ need not recite each factor as a litany in every case. *See Johnson v. Astrue*, No. 3-08-CV-1488-BD, 2010 WL 26469 at *4 (N.D. Tex. Jan. 4, 2010).

Even if the ALJ did not adequately explain her reasons for rejecting the opinion of Dr. McConnell, plaintiff has not shown prejudice. Significantly, Dr. McConnell never identified any specific manipulative limitations caused by plaintiff's wrist condition. Neither of the agency physicians who completed residual functional capacity assessments found that plaintiff was limited in her ability to reach, handle, or finger. (*Id.* at 660, 747). Still, the ALJ limited plaintiff to sedentary work with no more than occasional handling and fingering. (*Id.* at 74). One of the jobs identified by the vocational expert -- surveillance-system monitor -- does not require *any* handling

or fingering abilities. *See Dictionary of Occupational Titles* ("DOT") § 379.367-010 (4th ed. 1991).[2] Thus, even allowing for the handling and fingering limitations suggested by plaintiff, substantial evidence supports the finding that she is not disabled. *See Patterson v. Astrue*, No. 8-07-1602-HFF-BHH, 2008 WL 2944616 at *6 (D.S.C. Jul. 31, 2008) (ALJ's failure to give controlling weight to physician's opinion that carpal tunnel syndrome affected plaintiff's ability to reach, handle, or feel constituted harmless error because, even considering those limitations, plaintiff could perform job of surveillance-system monitor as suggested by vocational expert).

Plaintiff further argues that the ALJ should have recontacted Dr. McConnell to develop the record regarding his opinion. Under the social security regulations, an ALJ is required to recontact a medical source only "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Cornett v. Astrue*, 261 Fed.Appx. 644, 648, 2008 WL 58822 at *3 (5th Cir. Jan. 3, 2008), *quoting* 20 C.F.R. § 416.912(e). In this case, there is no indication that the ALJ found the evidence inconclusive or inadequate to render a decision, or that Dr. McConnell could have provided any additional information that would have been helpful to plaintiff. Without such evidence, there is no

---

[2] The DOT was promulgated by the U.S. Department of Labor to provide "standardized occupational information to support job placement activities." *See* DOT at xv. The DOT, along with a companion volume -- *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") -- contain descriptions of the requirements for thousands of jobs in the national economy and classifies those jobs based on various factors. The job of surveillance-system monitor, as defined in the DOT, involves:

> Monitor[ing] premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notif[ying] authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

DOT § 379.367-010. The reaching, handling, fingering, and feeling requirements for the job of surveillance-system monitor are rated, "Not Present -- Activity or Condition does not exist." *Id.*

basis for a remand. *See Newton*, 209 F.3d at 458 (remand required only if claimant shows prejudice resulting from ALJ's failure to request additional information); *Hector v. Barnhart*, 337 F.Supp.2d 905, 926-27 (S.D. Tex. 2004) (same).

C.

Next, plaintiff contends that the ALJ failed to consider the "total limiting effects" of her wrist impairment as required by 20 C.F.R. §404.1545(e) and SSR 96-8p. (*See* Plf. MSJ Br. at 17-22). Had the ALJ properly considered *all* of her limitations and restrictions, plaintiff maintains that the judge would have found that she could not use her right hand for any regular work activity. As best the court understands this claim, plaintiff appears to argue that: (1) substantial evidence does not support the finding that she can perform "occasional" handling and fingering; (2) the ALJ failed to perform a "function-by-function" analysis of her residual functional capacity; and (3) new evidence warrants a remand.

With respect to her first argument, plaintiff faults the ALJ for failing to consider the objective medical findings of Dr. McConnell, which supposedly show that she experienced decreased range of motion, muscle strength, and maximum grip following carpal tunnel release surgery in January 2007. The following chart summarizes the results of tests on plaintiff's right wrist ordered by Dr. McConnell:

| Date of Test | Range of Motion (Flexion) | Range of Motion (Extension) | Flexion Strength | Extension Strength | Supination Strength | Pronation Strength | Avg. Grip Strength |
|---|---|---|---|---|---|---|---|
| 12/7/06 | 50°/91% | 16°/29% | 4 lbs. | 3 lbs. | 2 lbs. | 3 lbs. | N/A |
| 5/3/07 | 12°/22% | 24°/44% | 4 lbs. | 2 lbs. | 2 lbs | 2 lbs. | 9 lbs. |
| 7/19/07 | 31°/56% | 9°/16% | 2 lbs. | 2 lbs. | 1 lb. | 1 lb. | 1 lb. |
| 8/21/07 | 37°/67% | 28°/51% | 4 lbs. | 2 lbs. | 2 lbs. | 2 lbs. | 12 lbs. |
| 4/3/08 | 31°/52% | 6°/10% | 3.5 lbs. | 2.9 lbs. | N/A | N/A | 5 lbs. |

(*See* Tr. at 870-71, 892-93, 900-901, 908-09, 968). Even if these test results document a worsening of plaintiff's wrist condition, there is substantial medical evidence in the record to support the finding that plaintiff has the residual functional capacity to perform sedentary work with no more than "occasional" handling and fingering. In May 2006, more than eight months *before* plaintiff's carpal tunnel release surgery, Dr. Sean Kilgore, a chiropractor, completed a functional capacity evaluation indicating that plaintiff could perform "occasional" handling, "frequent" fingering, and "constant" feeling. (*See id.* at 348).[3] Just two weeks before the surgery, Dr. Anuradha Tavarekere diagnosed plaintiff with carpal tunnel syndrome, ulnar nerve entrapment and Guyon's canal, cubital tunnel syndrome, radial tunnel syndrome and C7 radiculopathy. (*See id.* at 466). Despite these conditions, Dr. Tavarekere noted that plaintiff had "5/5" motor strength in all muscle groups and a "5/5, normal and symmetric" handgrip. (*See id.*). Plaintiff exhibited "no evidence of fasciculations, atrophy, or rigidity," "normal" fine finger movements, "normal ability" to handle small objects, and a "symmetric and normal" sensory exam. (*Id.* at 466). Relying in part on these findings, two agency physicians found that plaintiff had no manipulative limitations due to her wrist condition. (*See id.* at 660, 664, 745, 747). On November 13, 2007, approximately 11 months after her carpal tunnel release surgery, Dr. Paul Ellis noted that plaintiff "appears to be doing fine," and that "[i]f there is any residua, it is certainly only mild." (*See id.* at 850). In July 2008, Dr. Lemmon reported that plaintiff's condition had improved as a result of her carpal tunnel release surgery. (*See id.* at 986). Even Dr. McConnell, while noting that plaintiff had "possibly recurrent" carpal tunnel syndrome and wrist pain, observed in July 2008 that the pain was "better." (*See id.* at 1000). This evidence is more

---

[3] Although Dr. Kilgore reported a worsening of plaintiff's condition in March 2008, including a lack of sensation in her right thumb, a decreased range of motion, spasm and swelling in her wrist, and "motor" limitations in her wrist extensors, wrist flexors, finger flexors, finger abduction/adduction and grip strength, (*see* Tr. at 843-44), testing performed by Dr. McConnell the following month indicated that plaintiff had at least some ability to use her right hand. (*See id.* at 870-71).

than sufficient to support the ALJ's determination that plaintiff could perform "occasional" handling and fingering activities.

To the extent plaintiff argues that the ALJ failed to perform a "function-by-function" analysis of her residual functional capacity, that argument is without merit. Although the social security regulations require an assessment of work-related abilities on a "function-by-function basis," *see* SSR 96-8p, 1996 WL 374184 at *1 (SSA Jul. 2, 1996), an ALJ may rely on a residual functional capacity assessment performed by a state examiner. *See Beck v. Barnhart*, 205 Fed.Appx. 207, 213-14, 2006 WL 3059955 at *5 (5th Cir. Oct. 27, 2006); *Onishea v. Barnhart*, 116 Fed.Appx. 1, 2, 2004 WL 1588294 at *1 (5th Cir. Jul. 16, 2004). Here, two agency physicians, Dr. Richard Peavy and Dr. Terry Collier, performed a "function-by-function" analysis of plaintiff's residual functional capacity. (*See* Tr. at 657-64, 744-51). The ALJ was entitled to rely on those assessments without repeating the exercise. *Onishea*, 2004 WL 1588294 at *1; *see also Latham v. Astrue*, No. 7-07-CV-086-BD, 2008 WL 4635396 at *3 (N.D. Tex. Oct. 15, 2008).

Nor is remand required for the purpose of considering the opinion of Dr. Arthur Sarris, an orthopedic surgeon who examined plaintiff at the request of a worker's compensation insurance carrier. In a letter dated April 21, 2008, Dr. Sarris opined that plaintiff's carpal tunnel release surgery "has not helped her at all[,]" and that she could not return to her previous work or perform any other work. (*See* Plf. MSJ Br., Exh. A at 10-11). For some reason, that letter was never presented to the ALJ before she issued her decision on February 11, 2009. One month later, in March 2009, Dr. Sarris examined plaintiff a second time and noted continuing problems, including "pain and numbness consistent with a carpal tunnel syndrome along with a De Quervain's tenosynovitis involving compartments 1, 2 and 3 of the dorsoradial compartment of the right wrist." (*Id.*, Exh. A at 5). In response to a follow-up questionnaire, Dr. Sarris explained that plaintiff's ability to handle,

finger, and feel with her right hand was "negligible," and that those limitations had persisted with no significant improvement from April 2008 through March 2009. (*See id.*, Exh. A at 1-2). This new evidence was submitted to the Appeals Council in support of plaintiff's request to reopen the case. (*See* Tr. at 1, 7-9, 12-15). The Council considered the evidence, but denied the request for review. (*Id.* at 1-2).

New evidence justifies a remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003). Evidence is "material" if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Id.*; *see also Jones v. Astrue*, 228 Fed.Appx. 403, 406-07, 2007 WL 1017095 at *3 (5th Cir. Mar. 29, 2007), *cert. denied*, 128 S.Ct. 707 (2007) (warning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard). Here, the vast majority of evidence cited by plaintiff regarding her subjective complaints of pain, difficulties in grasping, structural abnormalities in her wrist, and the effectiveness of her carpal tunnel release surgery is cumulative of other evidence in the record. (*See, e.g.* Tr. at 227-34, 666-741, 865-982, 1001-03). The statement by Dr. Sarris regarding plaintiff's inability to return to work is not a medical opinion entitled to any probative weight. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to the Commissioner). That leaves Dr. Sarris's opinion that plaintiff has only "negligible" handling, fingering, and feeling abilities, and that those limitations have persisted with no significant improvement from April 2008 through March 2009. (*See* Plf. MSJ Br., Exh. A at 1-2). Not only is this evidence somewhat cumulative of prior opinions expressed by Dr. Sarris that are included in the administrative record, (*see* Tr. at 324), but, as previously discussed, those limitations would not

preclude plaintiff from working as a surveillance-system monitor. The court is unable to conclude that this new evidence would have changed the outcome of the disability determination.[4]

D.

Finally, plaintiff contends that the ALJ did not follow the proper legal standards in evaluating the severity of her depression and bipolar disorder. The social security regulations provide:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. § 404.1520(c). Notwithstanding the plain language of this regulation, the Fifth Circuit has held that a literal application of section 404.1520(c) would exclude far more claimants than the statute intended. *See Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000), *citing Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). As a result, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101, *quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). If the ALJ does not set forth the correct standard by reference to *Stone* or by an express statement recognizing the proper construction of the regulation, the court must presume that an incorrect standard was used to evaluate the severity of plaintiff's impairments. *See Loza*, 219 F.3d at 393; *Stone*, 752 F.2d at 1106; *Eisenbach v. Apfel*, No. 7-99-CV-186-BC, 2001 WL 1041806 at *6 (N.D. Tex. Aug. 29, 2001). Where, as here, the hearing decision specifically cites *Stone* as well as the applicable regulations, (*see* Tr. at 72), the only question is whether substantial evidence exists to

---

[4] The court recognizes that plaintiff was awarded disability benefits by a different ALJ on February 24, 2011, who determined that she was disabled as of February 12, 2009. (*See* Plf. MSJ Br., Exh. C). However, the mere fact that plaintiff was awarded disability benefits by another judge has no probative value in this case, particularly since it is not clear what evidence was submitted to the ALJ in the subsequent proceeding.

support the implied finding that the claimant's impairment is not severe. *See Musgrove v. Astrue*, No. 3-07-CV-0920-BD, 2009 WL 3816669 at *3 (N.D. Tex. Nov. 13, 2009).

> In evaluating the severity of plaintiff's mental impairment, the ALJ stated:
>
>> There is some mention in the medical records of possible bipolar disorder or depression. The claimant's testimony did not demonstrate more than minimal affects [*sic*] from her mental condition upon her activities of daily living. She testified to an active social life with many church functions through the week. Therefore, the claimant's mental impairment is non-severe.

(Tr. at 74). The only evidence before the ALJ that plaintiff suffered from depression and bipolar disorder was her own testimony, a self-rated depression inventory completed at her chiropractor's office, and a counselor's evaluation indicating that plaintiff had an "[a]djustment disorder with mixed emotions (anxiety and depression) related to 8-10-05 work injury." (*See id.* at 37-38, 338-39, 740, 875, 880). Even if this evaluation qualifies as a diagnosis of depression, the diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is "severe." *See Musgrove*, 2009 WL 3816669 at *3 (citing cases). Rather, there must be evidence that the diagnosed condition limits or interferes with the claimant's ability to engage in work related activities. *Id.*; *see also McClatchy v. Barnhart*, No. ASA-03-CA-0914-X, 2004 WL 2810100 at *6 (W.D. Tex. Dec. 3, 2004), *rec. adopted*, 2005 WL 1593395 (W.D. Tex. Jun. 30, 2005). Plaintiff does not cite to any such evidence in the record. Instead, she asks the court to remand this case for consideration of treatment records from Dallas Metrocare Services, presented for the first time on judicial review. (*See* Plf. MSJ Br., Exh. B).

In order to justify remand based on "new" evidence, plaintiff must establish, *inter alia*, that the evidence was unavailable at the time of her administrative proceeding *and* that she had good cause for failing to introduce the evidence in the prior proceeding. *Bradley v. Bowen*, 809 F.2d 1054,

1057-58 (5th Cir. 1987). Neither requirement is satisfied here. The most recent of the Dallas Metrocare records dates from March 3, 2008 -- more than eight months before the administrative hearing. (*See* Plf. MSJ Br., Exh. B at 1-11). The only reason plaintiff gives for not timely presenting this evidence is that her prior representatives failed to submit it. (*See* Plf. MSJ Br. at 24). Remand is not warranted under these circumstances. *See Geysen v. Sec'y of HHS*, 850 F.2d 263, 264 (5th Cir. 1988) (refusing to remand case just because plaintiff hired "a new lawyer with a new idea"); *Culver v. Astrue*, No. 07-C-643, 2008 WL 4103875 at *5 (E.D. Wis. Aug. 29, 2008) (noting that "[i]f simple inadvertence constitutes 'good cause,' then the finality and regularity of administrative proceedings would be fatally undermined every time a new lawyer believes additional evidence would be helpful").

## CONCLUSION

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: September 22, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE